**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUPERIOR GRAPHITE CO., | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 5830 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| RAUL CAMPOS and AMERICAN | ) | |
| ENERGY TECHNOLOGIES CO., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

The Plaintiff has filed a Motion to Compel the Defendant, AETC, to Comply with Plaintiff's supplemental Rule 33 Interrogatories (Nos. 1 and 4) and Rule 34 Requests for Production (Nos. 1, 9-18, 20, 24, 27, 30, 32, 35, 38-39, 46, 76, 84). [Dkt. #77]. The Defendant has vigorously objected to the attempt at discovery and has castigated the Plaintiff for allegedly not even mentioning the language of various contracts it claims it has with various agencies of the United States that purportedly prohibit it from disclosing any information on its "fluidized bed technology." [Dkt. #81]. Yet, oddly, while AETC's responsive memorandum takes umbrage at the Plaintiff's attempts to obtain discovery, it cites no cases that would support its central thesis that its supposed "secrecy" agreements with the government preclude discovery in this case under the discovery provisions of the Federal Rules of Civil Procedure. [Dkt. #81].[1] For the following reasons, the Motion to Compel [Dkt. #77] is granted.

---

[1] The effect of this failure is discussed *infra* at 11-12.

This case gives us at least a glimpse of the world of "high temperature fluidized bed furnace technology." The Plaintiff recites – and supports with a fair amount of documentary evidence in its Motion for a Preliminary Injunction [Dkt. #52, at 2-4] – a tale of industrial espionage in which its former employee and now Defendant, Jorge Campos, misappropriated a great deal of Plaintiff's proprietary information on this technology and sold it to Igor Barsukov, another former employee and the founder and principal of the corporate Defendant, AETC. Perhaps, not surprisingly, AETC has filed a Counterclaim against the Plaintiff, charging *it* with misappropriating AETC's trade secrets through one of their former employees, James Mercede. [Dkt. #64]. As in all cases, where the "truth" lies must await the unfolding of future events.

Our purview in this case is limited to discovery. This is not to denigrate in the slightest the vital importance that discovery serves in modern litigation. Indeed, their vital purpose is to assist in reaching a truthful result by eliminating what has been called "trial by ambush." *See Taylor v. Illinois*, 484 U.S. 400, 411-12 (1988); *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682-83 (1958); Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2001 at 40 (1994); *SE-Kure Controls, Inc. v. Vanguard Product, Inc.,* 2007 WL 781250 at *1 (N.D.Ill. 2007); 6 Wigmore, Discovery § 1845 at 490 (3d ed. 1940). Indeed, "[p]re-trial proceedings have become more costly and important than trials themselves.'" *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986). And so we turn to the precise issues at hand, mindful of Judge Moran's wise admonition that "[p]arties are entitled to a reasonable opportunity to investigate the facts – and no more." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994).

The issue at hand is AETC's failure to provide answers to interrogatories and documents responsive to certain requests served months ago in February of 2020. [Dkt. #77, ¶ 3]. AETC

2

responded and objected to the requests at issue on March 6 and 11, 2020. [Dkt. ##77-1, 77-2]. If the Plaintiff's Motion is any guide, Plaintiff got back to AETC with its issues regarding the objections three months later in June of 2020. [Dkt. #77, ¶. 4]. Though claiming to have abided by the meet-and-confer process, mandated by Local Rule 37.2, neither side budged. Yet, the Rule mandates that the parties meet and negotiate over their differences *in good faith*, which means more than paying lip service to the Rule and stubbornly adhering to one's initial preconceived assessment. *See Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion."); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("adamantly clinging to the positions with which they began" amounts to a failure "to comply, in good faith, with the requirements of Local Rule 37.2."). At least based on both sides' protestations of a desperate need for secrecy and confidentiality regarding all of their "high temperature fluidized bed furnace technology" it would have behooved the parties, more so than in the usual case, to have worked something out. But unfortunately, that did not occur.

## ARGUMENT

### A.

Significantly, the Protective Order that has been in place since September 27, 2019 *specifically* covers both trade secrets and information protected by statute, with *two* levels of confidentiality, including attorney's-eyes-only. [Dkt. #26]. One of the most commonly used safeguards in trade secret cases is, of course, disclosure only to counsel in the case. Case after case has found such a safeguard appropriate and adequate. *See Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.,* 235 F.R.D. 435, 445–46 (N.D. Ill. 2006*); Blanchard and Company v.*

3

*Barrick Gold Corp.*, 2004 WL 737485 at \*10–11 (E.D.La.2004)(and cases cited); *Surface Shields, Inc. v. Poly–Tak Protection Systems, Inc.*, 2003 WL 21800424, \*1 (N.D.Ill.2003)(ordering production of customer list but allowing party to designate items as "attorney's eyes only" and strongly suggesting that parties enter into agreed protective order regarding alleged confidential information); *Seaga Mfg., Inc. v. Fortune Resources Enterprises, Inc.*, 2002 WL 31399408, \*3–4 (N.D.Ill. 2002)(allowing discovery of customer list subject to "attorney's eyes only" and allowing for removal of that restriction when warranted); *N.L.R.B. v. Cable Car Advertisers, Inc.*, 319 F.Supp.2d 991, 999 (N.D.Cal.2004)(requiring production subject to a protective order)*; Liveware Publishing, Inc. v. Best Software, Inc.*, 252 F.Supp 2d 74, 85 (D.Del.2003)(customer lists disclosed only to "trial counsel"). *Compare, CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir.2002)(error to deny Defendant all access to Plaintiff's customer data base; proper course was issuance of a Protective Order limiting access to attorneys); *Atmel Corp. v. St. Paul Fire & Marine*, 2005 WL 3692874 (N.D.Cal.2005)(confidentiality of customer lists sufficiently protected by Protective Order); *Network Computing v. Cisco Systems*, 223 F.R.D. 392, 396 (D.S.C.2004)(Plaintiff ordered to provide a customer list under Protective Order).

Thus, the Confidentiality Agreement in this case clearly applies to the two issues in this current discovery dispute and allows for not one, but two levels of security. Why the parties entered into such an Agreement and asked the court to enter it if they had no intention of using it is perplexing. For that reason alone, AETC's objections are not persuasive, and the Plaintiff's Motion to Compel ought to be granted. *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002)(pointing to the implementation of Confidentiality Agreement).

4

**B.**

AETC has certain problems with Plaintiff's discovery requests that it develops in its Response to the Plaintiff's Motion. Its objections to the many requests at issue run along two lines: whether Plaintiff has adequately alleged its trade secrets and contracts that prohibit AETC from participating in discovery in this case. Examples of the types of objections at issue are:

> . . . because AETC does business with numerous governmental organizations (see the list of such organizations in the answer to Interrogatory No. 2 below), AETC is subject to numerous very strict data security standards, among them a NIST (National Institute of Standards and Technology of the U.S. Department of Commerce) standard entitled "Protecting Unclassified Information in Nonfederal Systems and Organizations." Under this and other similar standards, AETC is held accountable for ensuring physical protection of computer systems on which military information is stored. If AETC was to provide even the model number, make and serial number of any of its computers, then a computer "super hacker" would potentially be able to park in AETC's parking lot or some area in close proximity to AETC's disclosed, identified computers, and identify AETC's computers by IP (internet protocol) scan. Then that would open the doors to system vulnerability and breach AETC's obligations to its governmental (and potentially other) clients.
>
> ***
>
> By way of example, within the above-entitled NIST standard, AETC, a contractor under the standard, is required to "limit physical access to organizational systems, equipment, and the respective operating environments to authorized individuals," "protect and monitor the physical facility and support infrastructure for organizational systems," "escort visitors and monitor visitor activity," "maintain audit logs of physical access," "control and manage physical access devices," "enforce safeguarding measures for CUI [Controlled Unclassified Information] at alternate work sites," "protect the authenticity of communications sessions" and "protect the confidentiality of CUI at rest." Other governmental laws, executive orders, regulations, instructions, standards and guidelines referenced within the NIST standard that pertain to the protection of CUI . . .
>
> ***
>
> . . . AETC's testing procedures for fluidized bed furnace technology or components thereof, are protected from disclosure by numerous U.S. Government-controlled data security procedures including, but not limited to, the standards identified in the answer to Interrogatory No. 1 above.
>
> ***
>
> . . . information about AETC's fluidized bed furnace technology, [which is sought

5

by the Plaintiff] is protected from disclosure by the numerous contractual obligations AETC has with the various governmental agencies and departments that were disclosed in AETC's Answers and Objections to Plaintiff's Second Set of Interrogatories and U.S. Government, ITAR and EAR security restrictions

Further answering, AETC states that it has non-disclosure agreements over 50 organizations, whose identities are withheld due to AETC's contractual obligations to not disclose their identities and/or the existence of non-disclosure agreements with such organizations . . . is not limited to companies with whom AETC currently (or even since September 5, 2018, which is the beginning of the time frame of the conduct alleged in this lawsuit (see ¶¶ 31, 35 of the First Amended Complaint)) has any relationship.

***

. . . information and documentation about AETC's fluidized bed furnace technology are protected from disclosure by U.S. Government, ITAR and EAR security restrictions and the numerous contractual obligations AETC has with the various governmental agencies and departments that were disclosed in AETC's Answers and Objections to Plaintiff's Second Set of Interrogatories. AETC further objects to Request No. 30 on the ground that it seeks information about aspects of fluidized bed furnace technology over which Plaintiff necessarily has no proprietary or trade secret interest because all of the values for nitrogen gas consumption (for example, gas velocity, throughput, pressure and an add-on safety margin) related to Plaintiff's furnaces, from which pipe diameter is merely a value resulting from basic mathematical calculation using such values, have been publicly disclosed by Plaintiff in open source literature.

[Dkt. ## 77-1, 77-2].

**B.**

We begin with AETC's contention that Plaintiff has not identified with reasonable particularity its trade secrets that it claims AETC misappropriated, and that those purported secrets are actually public information and not trade secrets at all. As such, AETC contends, Plaintiff cannot seek discovery which would reveal AETC's trade secrets. [Dkt. #81, at 3-6, 14]. AETC's objections are typical of trade secret cases and highlight the limits of a public litigation forum in such cases. Campos allegedly passed Plaintiff's trade secrets on to Barsukov so, naturally, Plaintiff wants to have a look at AETC's "high temperature fluidized bed furnace technology" to see if and where its work was

misappropriated and employed. AETC, naturally, doesn't want Plaintiff "snooping" around in its technology, whether it misappropriated those trade secrets or not. But to say, as AETC seems to, that Plaintiff can only ask for documents that AETC thinks are connected to Plaintiff's technology is mistaken. [Dkt. # 81, at 5 (complaining that Plaintiff's requests "seek documents that show the specifications of all materials used or designed for use as the fluidized bed in AETC's fluidized bed furnace, without regard to which of Superior's documents about which of Superior's materials Superior claims AETC misappropriated."]. But that position is not acceptable under the Federal Rules of Civil Procedure and basic fairness. Or to use a more bucolic example, the fox doesn't get to tell the farmer which hens he ate or, as AETC wants to do here, that he didn't eat any.

AETC relies exclusively on a 20-year-old case involving a Plaintiff's trade secret discovery requests to a non-party. *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915 (N.D. Ill. 2001). Obviously, a non-party does not have the same involvement in a case as Defendant AETC has here, so the circumstances are very different. As Judge Moran intimated in *AutoMed Techs.*, ordinarily a party challenges the particularity of a Plaintiff's trade secret through a motion to dismiss or for summary judgment. 160 F. Supp. 2d at 921 n.3. In the ensuing twenty years, it has only become clearer that dispositive motions are the venue for challenging the particularity of a claimed party's trade secret. As the Seventh Circuit explained:

> a trade secret "is one of the most elusive and difficult concepts in the law to define. In many cases, the existence of a trade secret is not obvious; it requires an ad hoc evaluation of all the surrounding circumstances. For this reason, the question of whether certain information constitutes a trade secret ordinarily is best resolved by a fact finder after full presentation of evidence from each side.

*Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003). *See also nClosures Inc. v. Block & Co.*, 770 F.3d 598, 602 (7th Cir. 2014)(issue is whether Plaintiff can show

it took reasonable steps to keep its proprietary information confidential); *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 505 (7th Cir. 2011)("Because the Plaintiffs fail to show that the expressions of the Model have a status of secrecy, their trade secrets misappropriation claim cannot survive summary judgment on the merits."); *Tax Track Sys. Corp. v. New Inv'r World, Inc.*, 478 F.3d 783, 787 (7th Cir. 2007)("Tax Track need not show its information rises to the level of a trade secret, but it must nevertheless establish that it engaged in reasonable steps to keep the information confidential"). *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002)(affirming summary judgment for Defendant on Plaintiff's trade secret claim where Plaintiff's "tender of the complete documentation for the software leaves mysterious exactly which pieces of information are the trade secrets."); *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir. 1987)("Other courts have warned Plaintiffs of the risks they run by failing to identify specific trade secrets and instead producing long lists of general areas of information which contain unidentified trade secrets."); *ABC Acquisition Co., LLC v. AIP Prod. Corp.*, 2020 WL 4607247, at *9 (N.D. Ill. 2020)(Shah, J.)(summary judgment); *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, 2020 WL 2836778, at *1 (N.D. Ill. 2020)(Seeger, J.)(summary judgement); *Bhatia v. Vaswani*, 2019 WL 4674571, at *12 (N.D. Ill. 2019)(Dow, J.)(denying motion to dismiss); *Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115, 1123 (N.D. Ill. 2019)(Dow, J.)(preliminary injunction); *Liion, LLC v. Vertiv Grp. Corp.*, 2019 WL 1281977, at *2 (N.D. Ill. 2019)(Guzman, J.)(fact intensive inquiry inappropriate for motion to dismiss); *Puroon, Inc. v. Midwest Photographic Res. Ctr., Inc.*, 2018 WL 5776334, at *1 (N.D. Ill. 2018) (Lee, J.)(summary judgment); *Segerdahl Corp. v. Ferruzza*, 2018 WL 828062, at *3 (N.D. Ill. 2018)(Coleman, J.)(collecting motion to dismiss cases); *Meyer Tech. Sols., LLC v. Kaegem Corp.*, 2017 WL 4512918, at *2 (N.D. Ill. 2017)(Leinenweber, J.)(particularity an issue for the merits stage).

This list goes on. A discovery squabble is no place to litigate the ultimate issue in a case. And trying to avoid discovery altogether could not be more unfair and is hopelessly inconsistent with the discovery principles underlying Rule 26 of the Federal Rules of Civil Procedure or more contrary to the fundamental principle that the quest for truth is the object of all discovery and of trials. *Taylor v. Illinois*, 484 U.S. 400, 430 (1988); *Reid v. Silver*, 354 F.2d 600, 608 (7th Cir. 1965); *Ortiz-Lopez Sociedad Espanola v. Beneficiencia de Puerto Rico*, 248 F.3d 29, 31 (1st Cir. 2001).

What's past is prologue. In the year since this case has been filed, AETC has not challenged the particularity of Plaintiff's trade secrets – not with a motion to dismiss or a motion for summary judgment as seems customary judging from the caselaw. When Plaintiff filed its Motion for a Preliminary Injunction on December 9, 2019 [Dkt. #52], AETC chose not to litigate the issue. [Dkt. ##53, 57]. Significantly, at that time, Plaintiff had provided a much more detailed description of its trade secrets than anything set out in *AutoMed Techs.* [Dkt. #52, at 5-6]. And, significantly – and again, unlike *AutoMed Techs.*– as already stated, there is an Agreed Confidentiality Order in place covering the confidentiality of trade secrets. AETC has not adverted to it at all in its Response to Plaintiff's Motion to Compel and, seemingly, based on the submissions from the parties, has ignored it in objecting to Plaintiff's discovery requests.

The Agreement provides all the protection AETC thought necessary at the time it entered into it and, more importantly, all the protection that is available in a public forum. Indeed, the Agreement provides much more protection than the parties would have if it were left to a judge to distinguish among secret and non-secret facets of AETC's "high temperature fluidized bed furnace technology." It is extremely likely that no court in the country has any expertise or experience in this technology, and, more importantly, it is not a court's job to parse what is secret from what is not among the

9

technological information. *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002); *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc*., 2020 WL 2836778, at *11 (N.D. Ill. 2020). That is a matter for the parties to agree on. Accordingly, AETC's objections are unpersuasive.

## C.

The other half of AETC's desire to effectively opt out of the discovery process is its claim that, due to U.S. government contracts involving this technology, and statutory provisions, it cannot disclose any information involved in those projects to anyone. Not ever, and not in litigation, at all. Acceptance of this argument would effectively take the case out of the purview of the Federal Rules of Civil Procedure, promulgated by the Congress as they relate to the discovery process in cases brought in the federal courts. Obviously, given the Federal Rules governing discovery – and the purpose of all discovery in our system of justice, the rather extreme position insisted on by the Defendant is untenable, and "saying so doesn't make it so." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010); *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018). Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018). And repetition adds nothing to acceptability. *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012). In sum, the Federal Rules of Civil Procedure relating to discovery are not trumped in this case by the alleged contracts between the Defendant and some department of the thousands that exist within the federal government. What the Supreme Court said in *University of Pennsylvania v. E.E.O.C.,* 493 U.S. 182, 194 (1990), applies here:

> Acceptance of petitioner's claim would also lead to a wave of similar privilege claims by other [companies].... We perceive no limiting principle in petitioner's argument. Accordingly, we stand behind the breakwater Congress has established: unless

specifically provided otherwise in the statute, the EEOC may obtain "relevant" evidence. Congress has made the choice. If it dislikes the result, it of course may revise the statute.

*Cf., United Slates v. Cinergy Corp.*, 458 F.3d 705, 709 (7th Cir.2006)(An argument may be "scotched" where its acceptance would produce "outlandish consequences.").

Again, the Confidentiality Order provides for the situation here with *two levels* of confidentiality and, again, AETC ignores it. [Dkt. #81, at 11]. AETC does suggest that the third parties it has these contracts with be allowed to weigh in [Dkt. # 81, at 15] but, again, the Confidentiality Agreement covers that as well, allowing designations by non-parties. [Dkt. #26]. And, the time for "weighing in" was *over six months ago*, when AETC received the requests it objects to. It adverts to no attempt to contact its contractual partners and has made no use whatsoever of the Confidentiality Agreement during those six months. [Dkt. #81, at 15]. What, exactly, it may or may not have done in this regard is unknown, but six months is a long time. As already indicated, this conduct undermines the stance it takes in its response to the Plaintiff's Motion to Compel.

Moreover, third party agreements cannot foreclose discovery. "Contracts bind only the parties. No one can "agree" with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off." *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009). The Seventh Circuit has made it plain:

> that a person's desire for confidentiality is not honored in litigation. Trade secrets, privileges, and statutes or rules requiring confidentiality must be respected, see Fed.R.Civ.P. 45(c)(3)(A)(iii), but litigants' preference for secrecy does not create a legal bar to disclosure.

*Gotham Holdings*, 580 F.3d at 665. *See also Burton v. Am. Cyanamid*, 2016 WL 3661331, at *2 (E.D. Wis. 2016)("The fact that Plaintiffs and NL Industries agreed to keep the terms of the releases

confidential does not shield them from discovery."). AETC cites no case to the contrary. [Dkt. #81, at 6-10]. Time and again, the Seventh Circuit has emphasized that taking a position in a brief, but failing to support that position with pertinent authority, constitutes a waiver of the argument. *United States v. Barr*, 960 F.3d 906, 916 (7th Cir. 2020); *Gross v. Town of Cicero*, 619 F.3d 697, 704–05 (7th Cir. 2010) (undeveloped arguments are waived).

**D.**

AETC has been sued, and is counterclaiming, in a publicly-funded, public forum. Discovery is a critical, indeed, indispensable part of that suit. It would be inequitable if a party could – *allegedly* – purloin trade secrets and then avoid liability because it used those secrets to secure contracts with third parties, even government agencies, that included confidentiality provisions that prevented discovery of the very theft being alleged by the suit. Nowhere in the law are parties permitted under the guise of its forms to draw an impregnable conjurers circle around conduct claimed to be illegal. But that is the result AETC is arguing for. To contend that there will be no discovery regarding its "high temperature fluidized bed furnace technology" – which it has *allegedly* stolen – is untenable. And, as we know, "[t]he soundness of a conclusion may not infrequently be tested by its consequences," Posner, Cardozo: A Study in Reputation, 118 (1990), and, as noted above, an argument may be "scotched" where its acceptance would produce "outlandish consequences." *Cinergy Corp.*, 458 F.3d at 709. *See also  Florida Power & Light Co. v. United States Nuclear Regulatory Commission*, 470 U.S. 729, 741 (1985) ("An examination of the consequences that would follow upon adoption of the . . . rule . . . proposed . . . confirms the soundness of this conclusion").

Both sides claim to have much at risk in the way of secrecy in this litigation. According to the Plaintiff, the parties have had "unfruitful" discussions about alternate dispute resolution. [Dkt.

12

#77, ¶. 3]. But, this litigation is no different than any other: it should be conducted in public to the maximum extent consistent with respecting truly confidential information, such as trade secrets. *Hicklin Engineering L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006); *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir.2002). Respecting confidentiality does not foreclose discovery as the Confidentiality Orders clearly recognize. Closed proceedings breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595 (1980). The public is, in part, footing the bill for these parties to resolve their dispute. *Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir. 1991); *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015). It has the right to know how public money is being spent. *Baxter Int'l*, 297 F.3d at 546 (".... dispositive documents in any litigation enter the public record notwithstanding any earlier agreement. How else are observers to know what the suit is about....").

As litigation proceeds, decisions on discovery that the parties ask for court intervention on are committed to the broad discretion of the court. *Cobian v. McLaughlin*, 804 F. App'x 398, 400 (7th Cir. 2020); *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 865 (7th Cir. 2019); *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016). The parties disagree, and will continue to disagree, on what is discoverable and what is not. Being a range, not a point, discretion allows two decision-makers—on virtually identical facts—to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *See McCleskey v. Kemp*, 753 F.2d 877, 891 (11th Cir. 1985), *aff'd, McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987). *Accord Mejia v. Cook County, Ill.*, 650 F.3d 631, 635 (7th Cir. 2011). *Cf. United States v. Bullion,* 466 F.3d 574, 577 (7th Cir. 2006)(Posner, J.) ("The striking of a balance of uncertainties can rarely be deemed unreasonable....");

*Elliot v. Mission Trust Services, LLC*, 2015 WL 1567901, 4 (N.D. Ill. 2015). *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) *with United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996). Materials that one side thinks are confidential or secret may well be ordered to be disclosed. "Such rulings can rarely be labeled "correct" or "incorrect" in the sense that there is only one proper ruling in a particular set of circumstances. The very concept of discretion assumes that any number of answers to a question are possible, and that the answer is best left to the assessment of the judge." *Bracy v. Schomig*, 286 F.3d 406, 433 (7th Cir. 2002)(Rovner, J.,concurring in part and dissenting in part).

Based on their submissions regarding the present discovery dispute and the secrecy claimed to be involved, the parties may have been wise to have considered an alternate method of dispute resolution. As the Seventh Circuit has emphasized, if the prospect of litigating in public is daunting, "businesses that fear harm from disclosure required by the rules for the conduct of litigation often agree to arbitrate." *Baxter Int'l, Inc. v. Abbott Labs*., 297 F.3d 544, 545 (7th Cir.2002); *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000)("[p]eople who want secrecy should opt for arbitration.").

Thus, AETC will be given 21 days before it must comply with this Order and produce the requested discovery. The parties – again, Plaintiff has as much at stake in disclosure of trade secrets as AETC – could use that time for compliance to also address their issues and to submit their dispute to a process less public than litigating in a federal district court. *See, e.g., In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 693 (3d Cir. 2018); *In re Hewlett-Packard Co. S'holder Derivative Litig*., 716 F. App'x 603, 609 (9th Cir. 2017); *Tokyo Keiso Co., v. SMC Corp*., 307 F. App'x 446, 449 (Fed. Cir. 2009); *Venture Indus. Corp. v. Autoliv ASP, Inc*., 457 F.3d 1322, 1324

14

(Fed. Cir. 2006).

Failing that, the Confidentiality Order *they agreed to* will have to suffice and AETC – and surely, Plaintiff down the road – will have to comply with proper discovery requests. But short of that, the requested production must occur on a rolling basis beginning in 14 days from the date of this Order.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 9/1/20

15